IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

IOU CENTRAL, INC.                              :
d/b/a IOU FINANCIAL, INC                       :
                                               :
    Plaintiff,                                 :
vs.                                            :        CASE NO.:
                                               :
HOWARD D. MASON, III,                          :
TARINA L. MASON,                               :
SHOE STUDIO, LLC,                              :
SPORTY'S TAPHOUSE AND GRILL, INC. ,            :
EDS LLC; U.S. BANK, N.A.,                      :
LEAGUE SERVICES, LLC,                          :
GATEKEEPER SERVICES, LLC,                      :
SYSCO CINCINNATI, LLC,                         :
ARBOR SQUARE II, LLC,                          :
DIRECT CAPITAL CORPORATION,                    :
1 GLOBAL CAPITAL, LLC,                         :
                                               :
    Defendants.                                :

## **COMPLAINT**

    Plaintiff sues the Defendants as follows:

    1.      Plaintiff is incorporated in Delaware, whose principal place of business is located in Georgia, which is a citizen of both states per 28 U.S.C. §1332.

    2.      Defendants Howard and Tarina Mason are married individuals domiciled in and citizens of Ohio per §1332 as is Shoe Studio LLC [SSL] whose sole member is Howard Mason as is Defendant EDS, LLC, a non-existent entity, purportedly organized as an LLC.

    3.      Defendant Sporty's [STG] is incorporated in Ohio, the location of its principal place of business, of which it is a citizen per 28 U.S.C. § 1332.

    4.      The sole member of Defendants League and Gatekeeper is Willie Walker, an individual domiciled in and a citizen of Ohio per 28 U.S.C. § 1332.

5.      U.S. Bank is a national bank, with its principal place of business located in Ohio of which it is a citizen per 28 U.S.C. § 1348.

6.      Defendant Sysco Cincinnati, LLC's sole member is Sysco Corp, incorporated in Texas, the location of its principal place of business of which it is a citizen per 28 U.S.C. § 1332.

7.      Defendant Arbor Square II LLC's sole member is John Westheimer, an individual domiciled in and a citizen of Ohio per 28 U.S.C. § 1332.

8.      Defendant Direct Capital is incorporated in New Hampshire, the location of its principal place of business, of which it is a citizen per 28 U.S.C. § 1332.

9.      Defendant 1Global's member(s) are Carl Ruderman, and/or Joseph Luzinski, and/or Bradley Sharp and/or James Cassell, individual(s) domiciled in and citizen(s) of Florida per 28 U.S.C. § 1332.

10.     Per §1331, jurisdiction exists by 18 U.S.C. § 1961 *et seq*, as HDM, TM, STG and SSL shown below, operated, managed, participated in and conducted an enterprise; through their pattern of racketeering activity, federal crimes directed to Plaintiff, affecting interstate commerce; causing injury to Plaintiff in its business/property. ***Kushner v. King***, 533 U.S. 158 (2001); ***Sedima v. Imrex***, 473 U.S. 479 (1985) Per §1367, jurisdiction exists on all claims.

11.     Per §1332, jurisdiction exists as to the diverse parties and the sum in controversy exceeds $76,000.00 per the value of the relief from plaintiff's perspective, with attorney's fees. ***Jones v. Landry***, 387 F.2d 102 (5th Cir. 1967); ***Cohen v. Office***, 204 F.3d 1077 (11th Cir. 2000); ***Occidental v. Bullard***, 995 F.2d 1046 (11th Cir. 1986); Value may be determined by an instrument governing property at issue. ***Waller v. Prof.***, 296 F.2d 547 (5th Cir. 1961)

12.     Per O.C.G.A. § 9-10-90 *et seq* and/or the Constitution, personal jurisdiction exists and is proper for the Defendants, who reside in and/or transact business in Georgia; committed

2

and/or conspired to commit tortious acts or omissions in Georgia; and/or committed Georgia acts or omissions as agents of each other; and/or committed tortious injuries in Georgia by acts and/or omissions outside of Georgia; engaged in persistent Georgia contact; derived revenue from Georgia goods and/or consumed Georgia services; and/or reasonably consented to personal jurisdiction in Georgia, where they are subject to liability and/or per O.C.G.A. § 16-9-94.

13.    Plaintiff does not seek any damages or other *in-personam* relief as to Defendants U.S. Bank, Sysco Cincinnati, Arbor Square, Direct Capital and Defendant 1Global, provided that they seek none against Plaintiff in turn.

14.    Under 28 U.S.C. § 1391 and § 90, venue is proper as the Defendants reside in this District; and/or where a substantial part of the events or omissions giving rise to the claims occurred; and/or venue is proper by agreement of the parties in the Instruments at issue.

15.    On 4/6/06,  Defendants Howard and Tarina Mason [HDM and TM] acquired title to realty, 3148 Northerton Ct, Dayton OH 45414, Parcel No. 253230006, as spouses, by a Warranty Deed executed that day, recorded 5/10/06, Montgomery Deed No. 2006-042499. [Mason Property]

16.    On 4/27/06, HDM and TM executed a Promissory Note in the principal sum of $355,450.00 to First Equity Mortgage, for which the Mason Property was secured as collateral by a Mortgage, executed 4/27/06, recorded 5/11/06, Instrument No. 2006-042501. [First Loan]

17.    Upon information, HDM/TM used the First Loan to purchase the Mason Property.

18.    On 6/25/12, HDM and TM executed a Note in the principal sum of $350,800.00 to Wright-Patt Credit Union, for which the Mason Property was secured as collateral by a Mortgage, executed 6/25/12, recorded 7/5/12, Instrument No. 2012-041411. [Second Loan]

19.    Upon information, HDM and TM used the Second Loan to satisfy the First Loan per a Satisfaction of the First Loan recorded 9/25/12, Instrument No. 2012-00062233.

20.     On 3/31/16, Defendant HDM formed Defendant STG, whose address was listed as 3201 Siebenthaler Avenue, Dayton OH 45406, of which HDM was the sole and/or majority owner.

21.     On 8/26/16, Defendant HDM executed a Quitclaim Deed, conveying his interest in the Mason Property to Defendant TM, recorded 9/6/16, Instrument No. 2016-00047946, to avoid any attachment in this property of his debt, such as that of Plaintiff, detailed below.

22.     On 9/19/16, HDM and TM executed an Open-End Mortgage with a principal limit of $272,000.00, to U.S. Bank, securing the Mason Property as collateral for this debt, recorded 10/13/16, Instrument No. 2016-00056699. [Third Loan]

23.     On 9/20/16, TM executed a Line of Credit Note, with a principal limit of $28,500.00, to U.S. Bank, secured by an open-end Mortgage on the Mason Property, recorded 10/13/16, Instrument No. 2016-00056755. [Fourth Loan]

24.     On or about 9/20/16, HDM submitted an online loan application to Plaintiff's website, at its Georgia office for a commercial loan [Loan] misrepresenting (a) he sought a commercial loan from Plaintiff on behalf of SSL, a legal entity; (b) whose address was 3207 Siebenthaler Ave Dayton, OH 45406, Vendor License No. 57101964; (c) the loan was solely for the alleged business/commercial purposes to expand SSL's shoe inventory/marketing; (d) which they would and could repay; (e) HDM resided at 3148 Northerton Ct, Dayton OH; (f) HDM authorized ACH withdrawals from SSL's business account; (g) submitted bank statements and other documents to this effect.

25.     On 9/23/16, HDM spoke by phone with Plaintiff's Georgia staff confirming the information in the Loan Application, the telephone call and in the below Loan Documents.

26.     On 9/23/16, HDM electronically executed a Promissory Note to Plaintiff, through its website at its Georgia office, on behalf of SSL, for the principal sum of $77,248.00, through Plaintiff's website at its Georgia office, in exchange for Plaintiff's Loan funds. [Funds] which confirmed the information in the Loan Application and the telephone call as to the Application.

27.     The Note includes a Security Agreement, under which HDM and SSL guaranteed their real and/or personal property as collateral for the Loan, which states as follows:

> As security for the due and punctual payment of all amounts due or to become due and the performance of all obligations of Borrower from time to time under this Note and all extensions, renewals and amendments of any of the foregoing Borrower hereby pledges, transfers, assigns, conveys and grants a security interest to a continuing lien upon and security interest in and to all of Borrower's now owned or hereafter acquired, created or arising property including any right, title or interest in or to property of any kind whatsoever, whether real, personal or mixed, and whether tangible or intangible, and in each case regardless of where such Property may be located and whether such Property may be in the possession of Borrower, Lender or a third party and shall include any right, title or interest in or to property of any kind whatsoever, whether real, personal or mixed, and whether tangible or intangible and (1) any and all amounts owing to Borrower now or in the future from any merchant processor(s) processing charges made by customers of Borrower via credit card or debit card transactions: and (2) all other tangible and intangible personal property, including, but not limited to: (a) inventory, (b) equipment, (c) investment property, including certificated and uncertificated securities, securities accounts, security entitlements, commodity contracts and commodity accounts, (d) instruments, including promissory notes, (e) chattel paper, including tangible chattel paper and electronic chattel paper, (f) documents, (g) letter of credit rights, (h) accounts, including health care insurance receivables, (i) deposit accounts, (j) general intangibles, including payment intangibles and software, and (k) as-extracted collateral as such terms may from time to time be defined in the Uniform Commercial Code. The collateral includes all accessions, attachments, accessories, parts, supplies and replacements for the collateral, all products, proceeds and collections thereof and all records and data relation thereto. [Promissory Note Paragraph 21]

28.     On 9/23/16, HDM electronically executed a Guaranty of Plaintiff's Note, through its website at its Georgia office, who guaranteed its performance, including the above Security Agreement on all property owned by him and/or SSL, including the Mason Property and that of Defendant STG,  further detailed below.

29.     Under the Guaranty, HDM granted and/or intended to grant the same security interest in his property and that of SSL to guaranty its performance of the Instruments, including the Security Agreement, as both ultimately received and personally benefitted from the Funds.

30.     The Note and Guaranty both provide that they are enforceable in Georgia courts.

31.     On or about 9/23/16, HDM approved disbursement of the Funds, through Plaintiff's website at its Georgia office, for the alleged purposes of the Loan.

32.     On or about 9/23/16, HDM received the Funds by wire transfer from Plaintiff for the alleged purposes of the Loan, from Plaintiff's account at an FDIC-insured bank.

33.     HDL then closed his FDIC-insured account on 9/26/16 to block pre-approved ACH payments for the loan to Plaintiff's Georgia office and made no payments on the Loan.

34.     Plaintiff actually and justifiably relied on HDM's representations as honest and accurate in the Loan Application, Loan Documents, during the call and per his electronic approval for disbursement of the Funds; which resulted in Plaintiff wiring the Funds to him.

35.     HDM, TM, STG and SSL did and/or conspired to make false/misleading representations, or omissions of material fact to Plaintiff through HDM, shown above and below, who promised to repay the Funds intending never to repay them or which could not be repaid, as he knowingly misrepresented and/or failed to disclose to Plaintiff he (a) was dissolving and/or closing SSL; (b) which would not exist at 3207 Siebenthaler Ave; (c) sought the Funds only to satisfy personal debt by him/TM on the Mason Property and/or invest in STG; (d) he and SSL promised to repay the Funds which they would not and/or could not repay, per their undisclosed loan purposes and substantial unpaid debt to other creditors, such as the debt of Sysco, Global, Direct, Arbor and debt with U.S. Bank, incurred at the same time as Plaintiff's loan, which did not appear on his credit report; (e) quitclaimed his interest in the Mason Property at the last minute to TM for $1.00; (f) was

terminating SSL's account; (g) his bank statements and other documents of SSL were false; (h) Plaintiff would not have loaned the Funds if these facts were disclosed.

36.     Upon information, HDM and TM used the Funds to satisfy the Second Loan on the Mason Property, per its Satisfaction recorded 10/24/16, Instrument No. 2016-0058908.

37.     Upon information,  HDM and TM obtained the Third and Fourth Loans, due to their use of Plaintiff's Funds to satisfy the Second Loan.

38.     U.S. Bank took its Loans on the Mason Property subject to and with notice of the 2012 Second Loan, as did all other Defendants, as the 2012 Loan was still of record at the time of recordation of all other claims in this case, which was satisfied by the Funds.

39.     HDM dissolved Defendant SSL with Ohio Secretary of State, effective 9/30/16, per a Certificate of Dissolution filed 8/7/17, which he intended to close at the time of the Loan.

40.     On 11/17/16, Defendant HDM reinstated Defendant SSL with the Ohio Secretary of State by Articles of Organization filed that day, listing himself as SSL's owner/registered agent and its address at 3207 Siebenthaler Avenue, Dayton OH 45406.

41.     On 11/16/16, STG, by HDM, obtained title to realty, 3489, 3491, 3493 W. Siebenthaler Ave, Dayton OH, Parcel No. R72163-08-0009 [2016 STG Property], by a Warranty Deed executed that day, recorded 12/5/16, Inst. No. 2016-00067961, Dayton Lot 76907.

42.     The above 2016 Warranty Deed lists the Mason Property as STG's address.

43.      Upon information, STG, TM and HDM used the Funds to acquire assets for STG, such as purchasing the 2016 STG Property and financing its business from which they benefitted.

44.     Upon information, HDM and/or TM funded and formed SSL and/or STG, to protect their assets, including the Mason Property and property allegedly owned by STG, from actions to collect debt owed by HDM to creditors, such as Plaintiff and the other Defendants.

45.     Upon information, the assets of HDM, TM, SSL and/or STG are not separate and SSL and/or STG are owned and operated by HDM and/or TM from the Mason Property, which originally shared HDM as their agent and incorporator.

46.     On 8/8/17, HDM conveyed the 2016 STG Property to EPS LLC, per a Warranty Deed executed that day, recorded 8/8/17, Instrument No. 2017-00046605, again listing STG's address as the Mason Property and listing EPS's address as the 2016 STG Property.

47.     Upon information, HDM claims to be the CEO/sole member and owner of EPS.

48.     On 4/26/18, HDM, as CEO of EPS, conveyed the 2016 STG Property to League Services for $60,000, by a Warranty Deed executed that day, Instrument No. 201800024337, listing the mailing address for the 2016 STG property as that of EPS and League.

49.     EPS does not appear in the records of the Ohio Secretary of State as of 8/8/17 and/or 4/26/18, including with HDM as its officer, which was not a valid entity on either date.

50.     EPS was not a valid entity on the date of the 2016 Deed conveying the 2016 STG Property to it and on the date of the 2018 Deed conveying the STG Property from it.

51.     Both Deeds to and from EPS for the 2016 STG Property are null and void as EPS was not a valid entity which could not be a grantee or a grantor on the dates of those deeds.

52.     Title to the 2016-STG Property remains vested in STG as a result of the non-existence of EPS LLC on the date of the 2017 STG-Property Deed.

53.     Plaintiff's Note, Guaranty and/or Security Agreement attached to the 2016 STG-Property and/or its proceeds, to which Plaintiff is entitled as holder of the primary interest, as a result of the invalid deeds to and from EPS.

54.     On 5/14/18, League, by and through Willie F. Walker as CEO, conveyed the 2016 STG Property to Gatekeeper Services, LLC, by a Warranty Deed executed that day, Instrument

No. 2018-0028106, listing the mailing address for the 2016 STG property as that of Gatekeeper.

55.     Willie F. Walker is listed as the registered agent for League and Gatekeeper in the records of the Ohio Secretary of State.

56.     League was formed on 11/27/17 and Gatekeeper was formed on 11/5/17.

57.     Upon information, Walker was involved in similar civil and/or criminal disputes regarding non-payment of debt and criminal violations.

58.     Walker is known by HDM and TM, particularly as he conveyed other realty to them, per a General Warranty Deed executed by him and his spouse on 1/31/11, recorded 2/1/11, Instrument No. 2011-00007685, which HDM and TM sold 5/21/16, per a quitclaim deed executed that day, Instrument No. 2016-00035850.

59.     Upon information, League and Gatekeeper were organized purely to shield the 2016 STG Property from HDM's creditors which are also alter-egos of HDM and/or TM.

60.     League and Gatekeeper had knowledge and/or notice of the invalidity of the chain of title for the 2016 STG-Property to and from EPS as shown above.

61.     On 5/4/18, STG, by HDM, acquired title to realty, 5202 N. Main St. Dayton OH 45415, Parcel Nos. E2001008-0076/173100021, by a Warranty Deed executed that day, recorded 6/18/18, Montgomery Deed No. 201800036262, for $193,710.00. [2018 STG Property]

62.     On 9/6/18, STG, TM and HMD opened a restaurant/sports pub at the 2018 STG Property, which 'seats as many as 250 people and will employ about 36 people" according to HMD, who paid $188,000 for the 2018 STG Property, whose startup costs reached $300,000.

63.      Upon information, STG, TM and HDM used the Funds, traceable from the 2016 Property, to purchase this 2018 Property and finance STG's business from which they benefitted.

64.     HDM and/or TM owned and operated STG and SSL, League and Gatekeeper as alter-egos, disregarding them as separate entities, using them as conduits and instrumentalities for their personal affairs, such as obtaining the Funds and avoiding payment of the Loan, which share and co-mingled their assets, finances, their ownership and their offices.

65.     STG and SSL, League and Gatekeeper lack any existence separate from HDM and/or TM, per their unified interest/ownership, which are mere subterfuges by HDM and/or TM to avoid payment of Plaintiff's debt, which should be justly disregarded, with full liability for damages and relief imposed upon HDM, TM, SSL and STG, League and Gatekeeper.

66.     Plaintiff's Note, Guaranty and/or Security Agreement attached to the 2018 STG-Property and/or its proceeds, as well as any other assets of STG, to which Plaintiff is entitled as holder of the primary interest, as a result of the misconduct of STG, HDM and/or TM.

67.     On 4/8/15, Sysco filed a certificate of judgment for $7,891.23 for HDM, Montgomery Case No. 2015CJ196189, on Texas debt, subject to/with notice of the Second Loan.

68.     On 11/18/15, Defendant Arbor filed a certificate of judgment for $322,978.54 against HDM, Montgomery Case No. 2014CV10899, subject to, with notice of the Second Loan.

69.     On 12/19/16, Defendant Direct filed a certificate of judgment for $32,603.32 against HDM, Montgomery Case No. 2016CJ202095, subject to, with notice of the Second Loan.

70.     On 8/28/17, Defendant 1Global filed a certificate of judgment for $64,493.20, for Florida debt, against HDM/SSL, Montgomery Case No. 2017CJ204494, subject to, with notice of the Second/Third Loans.

71.     Upon information, HDM, TM, STG and/or SSL committed the same misconduct as to U.S. Bank, Sysco, Arbor, Direct and Global as Plaintiff, per their liens, constituting the same or identical state and/or federal crimes that HDM, TM, STG and/or SSL committed against

Plaintiff, detailed below.

72.    Plaintiff held and/or owned the Note, Guaranty [Instruments] and claims at issue [Claims] and had standing to enforce them before commencing suit, their principal balance and/or value exceeding $76,000.00, with attorney's fees as provided by law and their terms.

73.    HDM, TM, STG and/or SSL breached Plaintiff's Instruments and/or did not satisfy the Claims, not making payments and/or not fulfilling other obligations on them, in default; and Plaintiff accelerated payment of their balance.

74.    Plaintiff conferred the Funds evidenced by its Instruments and Claims upon HDM, TM, STG and SSL of which they had knowledge.

75.    Defendants HDM, TM, STG and SSL appreciated the benefit of the Funds, which they authorized, requested and/or accepted and ratified, from which they benefitted.

76.    HDM, TM, STG and SSL accepted and retained the Funds, which they should return or compensate, who are otherwise unjustly enriched at Plaintiff's expense, such as satisfying debt on the Mason Property and/or purchasing the STG Properties and purchasing their other assets, in which Plaintiff has the senior interest(s).

77.    HDM, TM, STG and SSL are indebted to Plaintiff for the unpaid balance of the Funds, plus interest, attorney's fees, costs and other charges per law.

78.    TM, STG and SSL are liable for HDM's acts/omissions in this suit, as their servant/agent, which he committed by their command and/or in the prosecution of and within the scope of their business/enterprise, from which they benefitted and ratified.

79.    All conditions precedent to suit occurred, were fulfilled, waived and/or their occurrence and/or fulfillment was unnecessary and/or futile.

80.     All interests in the Properties are subject to, subordinate and inferior to Plaintiff's senior interest, of which Defendants had notice/knowledge, who are not prejudiced by this relief.

## COUNT I: EQUITABLE AND/OR DECLARATORY RELIEF AS TO ALL DEFENDANTS

81.     ¶ 1-80, ¶ 98, ¶ 106 and ¶ 114 are incorporated by reference.

82.     Plaintiff's debt, evidenced by its Funds, including the Security Agreement, is the intended senior interest in property owned by HDM, TM, STG and SSL which Plaintiff is entitled to enforce, such as the Mason Property and the STG Properties.

83.     It is unjust and inequitable for Plaintiff's superior interest in above properties to be impaired by the misconduct of HDM, TM, STG and SSL, causing the interests of the other Defendants in them to appear senior to that of Plaintiff, which lacks a legal remedy.

84.     The Funds ultimately satisfied and are equitably subrogated to the rights of the Second Loan on the Mason Property, in turn subrogated to the rights of the First Loan on the Mason Property; also subrogated as the senior interest in the 2016 and 2018 STG Property; and other property owned by MDM, TM, STG and SSL traceable to Plaintiff's Funds. and/or its proceeds,

85.     Plaintiff is entitled to imposition of its senior interest in these properties and/or their proceeds by virtue of equitable subrogation, setting aside the cancellation of and reviving the 2012 Second Loan as the senior interest in the Mason Property held by Plaintiff; invalidating the STG Deeds on the STG Properties in which Plaintiff also holds the senior interest; and Plaintiff holds the senior interest in any property of SSL, STG, TM and HDM.

86.     Alternatively, Plaintiff is entitled to imposition of a senior equitable lien; equitable mortgage; constructive trust and/or like interest or remedy of its Loan on the Mason and/or STG Properties in any property of SSL, STG, TM and HDM, to the extent its interest is not equitably subrogated, as the Funds are traceable to these properties; in which HDM, TM,

STG and SSL cannot otherwise enjoy any beneficial interest without violating principles of equity, jeopardizing collection of the debt.

87. Per 28 U.S.C. § 2201 *et seq*, O.C.G.A. § 10-1-1 *et seq*, § 11-9-101 *et seq*, § 18-2-1 *et seq*, § 23-1-1 *et seq*, § 44-1-1 *et seq,* § 53-12-132 and applicable law, Plaintiff requests the Court declare and establish its senior interest in these above properties and/or their proceeds for the Loan by virtue of equitable subrogation, setting aside the cancellation of and reviving the 2012 Second Loan as its senior interest in the Mason Property; invalidating both STG Deeds on the STG properties in which it also holds the senior interest; as well as the senior interest any property of HDM, TM, SSL and STG and all other just relief.

88. Alternatively, Plaintiff requests the Court declare, establish and impose an senior equitable lien; equitable mortgage; constructive trust and/or like interest or remedy against the Mason Property; both STG Properties invalidating both STG Deeds on the STG properties in which Plaintiff also holds the senior interest; and any other Property owned by HDM, TM, SSL and STG, securing repayment of the Loan, to the extent its interests in those properties are not otherwise equitably subrogated as their senior interest and all other just relief.

## COUNT II: FRAUD, FRAUD IN THE INDUCEMENT AS TO HDM, TM, STG and SSL AND RELATED RELIEF AS TO ALL DEFENDANTS

89. ¶ 1-80, ¶ 87-88 and ¶ 101 are incorporated.

90. HDM, TM, STG and SSL acted through and/or conspired to make false/misleading representations, or omissions of material fact to Plaintiff through HDM, shown above and below, who promised to repay the Funds intending never to repay them or which could not be repaid, as he knowingly misrepresented and/or failed to disclose to Plaintiff he (a) was dissolving and/or closing SSL; (b) which would not exist at 3207 Siebenthaler Ave; (c) sought the Funds only to satisfy personal debt by him/TM on the Mason Property and/or invest in STG; (d) he and SSL promised to

repay the Funds which they would not and/or could not repay, per their undisclosed loan purposes and substantial unpaid debt to other creditors, such as the debt of Sysco, Global, Direct, Arbor and debt with U.S. Bank, incurred at the same time as Plaintiff's loan, which did not appear on his credit report; (e) quitclaimed his interest in the Mason Property at the last minute to TM for $1.00; (f) was terminating SSL's account; (g) his bank statements and other documents of SSL were false; (h) Plaintiff would not have loaned the Funds if these facts were disclosed.

91.    HDM, TM, STG and SSL conspired to fraudulently obtain the Funds from Plaintiff, intending to deceive Plaintiff into closing its Loan just with HDM, which they never intended to repay or could not repay, from which they benefitted by obtaining the Funds.

92.    Plaintiff actually and justifiably relied upon the false representations or omissions in paying the Funds to HDM and not securing their repayment with the Mason Property and/or STG Properties and/or not having the Loan Documents executed by TM, SSL and STG.

93.    The misrepresentations or omissions of material fact of HDM, TM, STG and SSL were calculated by them to deceive Plaintiff, a prudent lender, to illegally obtain and use the Funds, which they would otherwise lack, from which they benefitted by paying their debts and/or investing in their assets, which they concealed as shown above.

94.    Plaintiff was proximately and/or actually injured by the misconduct of HDM, TM, STG and SSL, which reasonably relied upon their above acts and/or omissions in approving and funding the Loan, without repayment of the Funds secured by TM, the Mason Property, STG, its property and assets or SSL, which Plaintiff would not have otherwise approved and funded.

95.    The Instruments were intended to bind those receiving and benefitting from the Funds, namely HDM, TM, STG and SSL and their property, in exchange for the Funds.

96. TM, STG and SSL were accidentally, mistakenly and/or wrongfully omitted from the Instruments, contrary to their intended purpose, which they authorized, requested and/or accepted and ratified and/or otherwise benefitted, which they seek to evade, unjustly impeding Plaintiff's recovery of the Funds for which Plaintiff has no adequate legal remedy.

97. Per 28 U.S.C. § 2201, O.C.G.A. § 23-1-1 *et seq* and applicable law, Plaintiff requests the Court declare and reform the Instruments to reflect their intended execution by TM, STG and SSL as signatories/grantors with HDM, with a security interest in the Mason and STG Properties and other property owned by them, relating back to their execution and all just relief to which the other Defendants are subject and/or subordinate.

98. Alternatively, O.C.G.A. § 51-1-1 *et seq* and applicable law, Plaintiff demands judgment against Defendants HDM, TM, STG and SSL for compensatory, consequential, special, nominal, punitive and exemplary damages and all other just relief.

## COUNT III: FEDERAL RICO AND RELATED RELIEF
## AS TO DEFENDANTS HDM, TM, STG AND SSL

99. ¶ 1-80, ¶ 87-88, ¶ 90-98 are incorporated.

100. Per 18 U.S.C. § 1961 *et seq*, HDM, TM, STG and SSL are persons, employed by/associated with their enterprise, formed as an association separate and apart from their existing relationships; to obtain and use the Funds by racketeering, to pay their debts and/or acquire their assets; from which they benefitted, the sole illegal purpose of their enterprise.

101. Per 18 U.S.C. § 1961 *et seq*, HDM, TM, STG and SSL conducted and/or participated in their enterprise to commit a pattern of racketeering activity, aiding, abetting and/or assisting, unlawfully agreeing to assist, and/or conspiring to commit related, continuing crimes, affecting interstate commerce, devised and done to intentionally, fraudulently obtain and use the Funds for their personal purposes, by interstate transactions/communications; as follows:

(a)      HDM's false, misleading online loan application as to Loan's alleged business purposes, false business name and address, deceiving Plaintiff into believing that HDM/SSL was an actual business, with a valid purpose for the Loan, causing Plaintiff to approve the Loan and pay the Funds under these circumstances, in violation of 18 U.S.C. §1342 and §1343;

(b)      The deceptive call by HDM with Plaintiff misrepresenting the Loan's purpose, its parties, SSL's status, address; ability to repay the Loan, his residence and authorization for account withdrawals, deceiving Plaintiff into believing the Loan would be repaid from the account, causing Plaintiff to approve the Loan and provide the Funds based upon the false information, which HDM/SSL could not and/or never intended to repay, in violation of §1343;

(c)      The online execution of the Loan Documents deceiving Plaintiff into believing the Loan was for HDM's valid business purpose which would be repaid, which had no valid purpose and HDM/SSL could not and/or never intended to repay, causing Plaintiff to approve the Loan and provide the Funds based upon the false information in violation of §1343;

(d)      The fraudulent online approval by HDM for disbursement of the Funds by Plaintiff's bank, deceiving Plaintiff, which believed the Loan would be repaid, approving the Loan and providing the Funds from its FDIC-insured account per the false information, which HDM/SSL could not and/or never intended to repay, in violation of §1343 and §1344;

(e)      Receipt of the Funds, deceiving Plaintiff into ratifying the alleged valid Loan from its FDIC-insured account, which believed HMM/SSL were valid borrowers, who intended to repay the Funds which they could not and/or would not, in violation of §1343-§1344;

(f)      Closing the FDIC-insured account to block approved Loan payments, upon which Plaintiff relied in approving the Loan, barring recovery of the Funds, in violation of §1344;

(g)     These related crimes constitute conspiracy in violation of §1349 which HDM, TM, STG and SSL have also committed by fraudulently soliciting funds from others throughout the county, including U.S. Bank and the other Defendants as detailed above.

102.     HDM, TM, STG and SSL targeted Plaintiff to fraudulently, falsely and illegally obtain and use the Funds to pay their debts and/or invest in their assets, detailed above, which they concealed; from which they benefitted, violating 18 U.S.C. § 1961 *et seq* per this (a) investment of the Funds gained from their racketeering into their enterprise; (b) this use of their racketeering to acquire or maintain their interest and/or control of their enterprise; (c) this participation in their enterprise through their pattern of racketeering; and (d) conspiracy to violate the above laws.

103.     Plaintiff reasonably relied on the deceptions and fraud forming the basis for the racketing activity of HDM, TM, SSL and STG, in approving the Loan, executing the Loan Documents and advancing the Funds, which was unaware of the above crimes.

104.     The racketeering of HDM, TM, STG and SSL through their enterprise violated 18 U.S.C. § 1961 *et seq*, reasonably calculated by them to deceive Plaintiff, a prudent lender, to illegally obtain and use the Funds, which they would otherwise lack, from which they benefitted by paying their debts and/or investing in their assets, which they concealed as shown above.

105.     Plaintiff was proximately and/or actually injured in its business/property by reason of the violations of 18 U.S.C. § 1961 *et seq*, by HDM, TM, STG and SSL per its  reasonable reliance on their criminal deceptions in approving the Loan and wiring the Funds to HDM/SSL, without securing their repayment by TM, STG and/or against the Mason Property and STG's assets, which Plaintiff would not have otherwise done, precluding their recovery causing their loss.

106.    Per 28 U.S.C. § 2201 *et seq*, 18 U.S.C. § 1961 *et seq* and applicable law, Plaintiff demands judgment as to HDM, TM, STG and SSL for disgorgement of and/or damages at least equal to the Funds, its equitable remedies in this suit; treble damages, punitive damages, pre-judgment interest from the date of its loan, costs and attorney's fees.

## COUNT IV: GEORGIA RICO, GSPCA AND RELATED RELIEF
## AS TO DEFENDANTS HDM, TM, STG AND SSL

107.    ¶ 1-80, ¶ 87-88, ¶ 90-98, ¶ 101 and ¶ 106 are incorporated.

108.    Per O.C.G.A. § 16-14-1 *et seq*, [Georgia RICO] HDM, TM, STG and SSL are persons, employed by/associated with their enterprise, formed as an association separate and apart from their existing relationships; which they conducted and/or participated to acquire /maintain property, the Funds, by racketeering, using them to pay their debts and/or acquire their assets; from which they benefitted, the sole illegal purpose of their enterprise.

109.    Per O.C.G.A. § 16-14-1 *et seq*, HDM, TM, STG and SSL conducted and/or participated in their enterprise to commit a pattern of racketeering activity, aiding, abetting and/or assisting, unlawfully agreeing to assist, and/or conspiring to commit related, continuing crimes, namely the above federal crimes and below Georgia crimes, devised and done to intentionally, fraudulently obtain and use the Funds for their personal purposes, as follows:

(a)    The false, misleading online loan application on the Loan's alleged business purposes, business name/address, deceiving Plaintiff into providing the Funds based upon the false information, which HDM/SSL could not and/or never intended to repay, violating O.C.G.A. §16-8-3 and §16-9-93 [GCSPA] by this unauthorized use;

(b)    The deceptive call with Plaintiff misrepresenting the Loan's purpose, its parties, SSL's status, its address; ability/intention to repay the Loan, residence and authorization for

account withdrawals, deceiving Plaintiff into providing the Funds based upon the false information, which HDM/SSL could not and/or never intended to repay in violation of 16-8-3;

(c)     The deceptive online execution of the Loan Documents, deceiving Plaintiff into providing the Funds based upon the false information, which HDM/SSL could not and/or never intended to repay, executing the Instruments and the online account authorization knowing it would not be honored, in violation of § 16-8-3, O.C.G.A. § 16-9-20 and O.C.G.A. § 16-9-93;

(d)     The fraudulent online approval for disbursement of the Funds by Plaintiff's bank, in violation of O.C.G.A. § 16-8-3 and § 16-9-20;

(e)     The deceptive receipt of the wired Funds, deceiving Plaintiff into providing the Funds based upon the false information, which HDM/SSL could not and/or never intended to repay, in violation of O.C.G.A. § 16-8-3;

(f)     Closing the account to block approved Loan payments, deceiving Plaintiff into providing the Funds based upon the false information, which HDM/SSL could not and/or never intended to repay, executing the Instruments and the online account authorization knowing it would not be honored, in violation of § O.C.G.A.16-8-3 and O.C.G.A. § 16-9-20;

(g)     The above federal crimes set forth in Plaintiff's count for federal RICO;

110.     HDM, TM, STG and SSL targeted Plaintiff to fraudulently, falsely and illegally obtain and use the Funds to pay their debts and/or invest in their assets, detailed above, which they concealed; from which they benefitted, violating O.C.G.A. § 16-14-1 *et seq et seq* per their (a) investment of the Funds gained from their racketeering into their interstate enterprise; (b) use of their racketeering to acquire or maintain their interest and/or control of their enterprise; (c) participation in their enterprise through their pattern of racketeering; and (d) conspiracy to violate the above laws.

111.   Plaintiff reasonably relied on the deceptions and fraud forming the basis for racketing activity of HDM, TM, SSL and STG in approving the Loan, executing the Loan Documents and advancing the Funds, which was unaware of the above crimes.

112.   The racketeering of HDM, TM, STG and SSL through their enterprise violated O.C.G.A. § 16-14-1 *et seq*, reasonably calculated by them to deceive Plaintiff, a prudent lender, to illegally obtain and use the Funds, which they would otherwise lack, by which they benefitted by paying their debts and/or investing in their assets, which they concealed as shown above.

113.   Plaintiff was proximately and/or actually injured in its business/property by reason of the violations of O.C.G.A. § 16-14-1 *et seq*, by HDM, TM, STG and SSL per its reasonable reliance on the violations in approving the Loan and wiring the Funds to HDM/SSL, without securing their repayment by TM, STG and/or against the Mason Property and STG's assets, which Plaintiff would not have otherwise done, precluding their recovery causing their loss.

114.   Per 28 U.S.C. § 2201 *et seq*, O.C.G.A. § 16-14-1 *et seq* and applicable law, Plaintiff demands judgment as to HDM, TM, STG and SSL for disgorgement of and/or damages at least equal to the Funds, its equitable remedies in this suit; treble damages, punitive damages, pre-judgment interest from the date of its loan, costs and attorney's fees.

115.   Alternatively, per , O.C.G.A. § 16-9-90 *et seq* Plaintiff demands judgment as to HDM, TM, STG and SSL for their GSPCA violations, damages, attorney's fees and costs.

## COUNT V: ATTORNEY'S FEES, COSTS
## AND RELATED RELIEF AS TO DEFENDANTS
## HDM, TM, STG AND SSL

116.    ¶ 1-80, ¶ 87-88, ¶ 90-94, ¶ 98, ¶ 101, ¶ 106  and ¶ 115 are incorporated.

117.    O.C.G.A. § 13-6-11 states as follows:

The expenses of litigation generally shall not be allowed as a part of the damages; but where the plaintiff has specially pleaded and has made prayer therefor and where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them.

118.    HDM, TM, STG and SSL acted in bad faith by failing to comply with their legal duties owed to Plaintiff, intentionally engaging in their pre-suit misconduct, causing the loss of the Funds, requiring this suit.

119.    HDM, TM, STG and SSL were stubbornly litigious as there was no bona-fide dispute of their liability to Plaintiff, requiring its unnecessary trouble and expense to bring suit.

120.    Under O.C.G.A. § 13-6-11 *et seq* and applicable law, Plaintiff demands judgment against HDM, TM, STG and SSL for its attorney's fees, costs and all other just and proper relief.

121.    Defendants HDM and/or TM are not minors or adjudged as incompetent,  were not in the military for the last 30 days and not subject to protection per 50 U.S.C. §3901 *et seq.*

Respectfully submitted this 16th day of September 2019.

By:    */s/Paul G. Wersant*
        Paul G. Wersant
        3245 Peachtree Parkway, Suite D-245
        Suwanee, Georgia 30024
        Telephone: (678) 894-5876
        Email: pwersant@gmail.com
        Attorney for Plaintiff