IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IOU CENTRAL, INC. d/b/a IOU FINANCIAL, INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION NO. |
| | : | 1:19-CV-04202-LMM |
| v. | : | |
| | : | |
| HOWARD D. MASON, III, *et al.*, | : | |
| | : | |
| | : | |
| | : | |
| Defendants. | : | |

## **ORDER**

This case comes before the Court on Defendants EPS LLC, Howard D.

Mason III, Tarina L. Mason, Shoe Studio, LLC, and Sporty's Taphouse and Grill,

Inc.'s Motion to Dismiss [100], Defendant Thrive Mortgage LLC's Motion to

Dismiss [104], and Plaintiff IOU Central's Motion for Leave to File Amended

Response [112]. After due consideration, the Court enters the following Order:

## I.   **BACKGROUND**[1]

Plaintiff IOU Central, Inc., a lender, alleges that it issued a commercial

loan of $77,248.00 to Defendants Howard Mason and Shoe Studio LLC ("Loan

Recipients"). Dkt. No. [94] ¶¶ 22–32. In exchange for the loan, Plaintiff alleges,

---

[1] The following facts are taken from the Fourth Amended Complaint, Dkt. No. [94], and construed in the light most favorable to Plaintiff, the non-moving party.

Defendant Mason signed a Promissory Note on behalf of Defendant Shoe Studio, which contained a Security Agreement encumbering the Loan Recipients' property. Id. ¶ 27. Defendant Mason also executed a Guaranty Agreement. Id. ¶ 28. Not long after, Defendants Mason and Shoe Studio allegedly breached these agreements by defaulting on their loan payments, and Defendant Mason allegedly dissolved Shoe Studio. Id. ¶¶ 37–38.

The remaining Defendants in this case were not direct parties to this loan. They are businesses and individuals who own property connected in various ways to the Loan Recipients. Plaintiff has sued these Defendants on the grounds that they conspired to have the Loan Recipients take out the loan and then fraudulently siphoned the loan proceeds from the Loan Recipients. These Defendants include two groups.

One of the groups Plaintiff calls "the Gang." It includes, in addition to the Loan Recipients, Defendant Tarina Mason; Defendant Sporty's Taphouse and Grill, Inc. ("Sporty's"); Defendant EPS LLC; Defendant League Services, LLC; Defendant Gatekeeper Services LLC; Defendant Stately Services, LLC; Defendant Silverline Services, LLC; Defendant Willie Walker; Defendant Lamar Jordan; Defendant Eugene Henderson; and Defendant Thomas Webb. Id. ¶¶ 2–7.

The second group, the non-Gang Defendants, includes U.S. Bank, Thrive Mortgage, LLC, and Chrysalis Payne.[2] U.S. Bank and Thrive Mortgage hold

---

[2] Defendant U.S. Bank has been dropped from this action through a consent judgment. Dkt. No. [123].

ostensible interests in properties that Plaintiff wishes to attach through the loan agreements. Defendant Payne is the mortgagor of a property of which Thrive Mortgage is the mortgagee. Id. ¶ 68.

Two pending motions to dismiss are before the Court. The first was filed by Defendants Howard Mason, Tarina Mason, Shoe Studio, Sporty's, and EPS (collectively "Mason Defendants"). Dkt. No. [100]. They argue that Plaintiff has failed to state a claim against them because (1) Plaintiff's operative complaint is a shotgun pleading; (2) Plaintiff's action for breach of the loan agreements is res judicata; and (3) Plaintiff's fraud and RICO claims are inadequately pled. Id. The second motion to dismiss was filed by Thrive Mortgage, which argues that Plaintiff has failed to state a viable claim to an interest in its mortgaged property. Dkt. No. [104]. After setting forth the legal standard, the Court will address the Mason Defendants' Motion to Dismiss then Thrive Mortgage's Motion to Dismiss.[3]

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While this pleading standard does not require "detailed factual allegations," the Supreme Court has held that "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will

---

[3] Plaintiff's Motion for Leave to File Amended Response [112] is **GRANTED** for good cause shown and in the interest of hearing the merits of this case.

not do." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v.</u>
<u>Twombly</u>, 550 U.S. 544, 555 (2007)).

     To withstand a Rule 12(b)(6) motion to dismiss, "a complaint must contain
sufficient factual matter, accepted as true, to 'state a claim to relief that is
plausible on its face.'" <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 570). A complaint is
plausible on its face when the plaintiff pleads factual content necessary for the
court to draw the reasonable inference that the defendant is liable for the conduct
alleged. <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at 556).

     At the motion to dismiss stage, "'all well-pleaded facts are accepted as true,
and the reasonable inferences therefrom are construed in the light most favorable
to the plaintiff.'" <u>FindWhat Inv'r Grp. v. FindWhat.com</u>, 658 F.3d 1282, 1296
(11th Cir. 2011) (quoting <u>Garfield v. NDC Health Corp.</u>, 466 F.3d 1255, 1261 (11th
Cir. 2006)). However, this principle does not apply to legal conclusions set forth
in the complaint. <u>Iqbal</u>, 556 U.S. at 678.

### III.   MASON DEFENDANTS' MOTION TO DISMISS

     The Mason Defendants move to dismiss Plaintiff's Fourth Amended
Complaint for three reasons: (1) Plaintiff's Complaint is a shotgun pleading; (2)
Plaintiff's suit for breach of the Promissory Note and Guaranty is res judicata,
and (3) Plaintiff's fraud and RICO claims are inadequately pled. Dkt. No. [100].

Plaintiff has responded opposing these arguments. Dkt. No. [111]. The Court will first address res judicata and then the adequacy of pleading.[4]

### A.   Res Judicata

The Mason Defendants argue that Plaintiff's case is barred by the doctrine of res judicata. Dkt. No. [100] at 7. Plaintiff previously sued Defendants Howard Mason and Shoe Studio in the Common Pleas Court of Montgomery, Ohio for their breach of the Promissory Note and Guaranty. Dkt. No. [94] ¶¶ 43, 46. Plaintiff obtained a judgment in that suit on June 15, 2017, id. ¶ 46, more than two years before it sued in this Court based on the very same claim, among others. Plaintiff alleged this judgment for the first time in its Fourth Amended Complaint filed on August 15, 2020. Dkt. No. [94].[5] Plaintiff contests Defendants' res judicata argument by arguing that it is not bringing the same claim. Rather, Plaintiff argues it is seeking to enforce the judgment obtained in Ohio. Dkt. No. [111] at 15–16. The Court begins by addressing whether Plaintiff's claims are res judicata by virtue of the Ohio judgment and then addresses which parties the prior judgment shields from suit.

---

[4] The Court previously found Plaintiff's Complaint to be a shotgun pleading and ordered it to amend. Dkt. No. [69]. The Court has closely reviewed Plaintiff's Fourth Amended Complaint and finds that it sets forth the facts and claims with enough clarity that it is no longer a shotgun pleading.

[5] Plaintiff filed a "Judgment Entry document" on December 12, 2019 which contained the Ohio judgment. Dkt. No. [46]. But Plaintiff did not incorporate the judgment as an allegation until the Fourth Amended Complaint.

### 1.     *The Ohio Judgment and Plaintiff's Claims*

The doctrine of res judicata, "in conjunction with 28 U.S.C. § 1738, the Full Faith and Credit Statute, bars relitigation of matters that were previously litigated in a prior state suit." Brown v. One Beacon Ins. Co., 317 F. App'x 915, 917 (11th Cir. 2009) (per curiam) (unpublished) (citing Saboff v. St. John's River Water Mgmt. Dist., 200 F.3d 1356, 1359 (11th Cir. 2000)). Section 1738 requires a federal court to give a state court judgment the same preclusive effect as would be given in the state where the judgment issued. Id. (quoting Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 81 (1984)). The parties agree that the judgment was issued in Ohio. So the question for this Court "is whether [Ohio's] law of res judicata would ordinarily bar" Plaintiff's claim. Saboff, 200 F.3d at 1360.

In Ohio, res judicata encompasses two related concepts: "claim preclusion, also known as res judicata or estoppel by judgment, and issue preclusion, also known as collateral estoppel." O'Nesti v. DeBartolo Realty Corp., 113 Ohio St. 3d 59, 61, 862 N.E.2d 803, 806 (Ohio 2007) (citing Grava v. Parkman Twp., 73 Ohio St. 3d 379, 381, 653 N.E.2d 226 (Ohio 1995)). Here, the Mason Defendants have invoked the first concept, claim preclusion, because they argue that the Ohio judgment forecloses Plaintiff's entire claim. Dkt. No. [100] at 7–8. "Claim preclusion prevents subsequent actions, by the same parties or their privies, based upon any claim arising out of a transaction that was the subject matter of a previous action." O'Nesti, 113 Ohio St. 3d at 61, 862 N.E.2d at 806.

Res judicata precludes more than just the claims directly raised in the prior action; it precludes claims that "*could have* been litigated in the previous suit[.]" Id. (emphasis added) (citing Grava, 73 Ohio St. 3d at 382, 653 N.E.2d 226); see also Grava, 73 Ohio St. 3d at 382; 653 N.E.2d at 229 ("It has long been the law of Ohio that an existing final judgment or decree between the parties to litigation is conclusive as to all claims which were *or might have been* litigated in a first lawsuit." (internal quotation omitted)). Ohio law is clear on the policy behind this rule: "Res judicata promotes the principle of finality of judgments by requiring plaintiffs to present every possible ground for relief in the first action." Kirkhart v. Keiper, 101 Ohio St. 3d 377, 378, 805 N.E.2d 1089, 1091 (Ohio 2004) (citing Nat'l Amusements, Inc. v. Springdale, 53 Ohio St. 3d 60, 62, 558 N.E.2d 1178 (Ohio 2004)).

Under Ohio's law of res judicata, Plaintiff's claims against Defendant Howard Mason and Defendant Shoe Studio are barred. Plaintiff admits that it sued these Defendants in Ohio for breach of the same agreements at issue here and obtained a judgment in that suit. Dkt. No. [94] ¶ 46 ("On 6/15/17, IOU obtained a default judgment in the Ohio Cae against HDM and SSL for $87,727.60, plus costs."). Accordingly, Plaintiff's claims against the Loan Recipients for breach of the loan agreements are barred.

Plaintiff's claims adjacent to its breach-of-contract claim are also barred under Ohio law. "[A] valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or

occurrence that was the subject matter of the previous action." <u>Grava</u>, 73 Ohio St. 3d at 382–83, 653 N.E.2d at 229. Put differently,

> [t]hat a number of different legal theories casting liability on an actor may apply to a given episode does not create multiple transactions and hence multiple claims. This remains true although the several legal theories depend on different shadings of the fats, or would emphasize different elements of the facts, or would call for different measures of liability or different kinds of relief.

<u>Id.</u> (citing Restatement (Second) of Judgments § 24 cmt. c (Am. Law Inst. 1982)).

Here, Plaintiff claims that Defendant Mason dissolved Defendant Shoe Studio to avoid the debt, then formed Sporty's to purchase certain properties with the loan proceeds. Dkt. No. ¶¶ 37–43. But Plaintiff alleges that these actions were part and parcel of the breach because the Loan Recipients "did not intend to repay [Plaintiff's] funds . . . ." <u>Id.</u> ¶ 35. Instead, under Plaintiff's own version of events, the loan transaction was part of a larger scheme to defraud Plaintiff and spin off its funds into disparate assets. This makes the loan part of the same "transaction or occurrence that was the subject matter of the previous action," <u>Grava</u>, 73 Ohio St. 3d at 382–83, 653 N.E.2d at 229, even though Plaintiff has raised new theories of liability and new forms of relief. Notably, Defendants' alleged "fraudulent dissolution" and "fraudulent reinstatement" of corporate entities to hide the funds happened almost immediately after the loan transaction and well before Plaintiff filed suit in Ohio on February 3, 2017. Accordingly, Plaintiff's claims against the Loan Recipients related to the breach-of-contract

claim arise out of the same transaction and occurrence and are barred by res judicata.

Plaintiff argues that res judicata does not bar its action because it is not suing here to relitigate its claims, but rather to enforce the judgment it has already obtained. However, Plaintiff's argument is not consistent with its conduct or the plain language of its pleadings.

Plaintiff obtained the Ohio judgment more than two years before it filed this suit. But Plaintiff never raised the judgment in a pleading until its Fourth Amended Complaint, eleventh months into this case.[6] Even then, Plaintiff apparently did so at the prompting of the Mason Defendants' counsel. See Dkt. No. [100] at 7 ("Plaintiff did not disclose this critical fact to the Court until after the undersigned counsel telephoned Plaintiff's counsel last week, upon his entry into this case, and inquired about the existence of the prior Ohio judgment by Plaintiff against Mr. Mason."). It was after this call that Plaintiff added the paragraphs alleging the existence of the Ohio judgment by way of a Fourth Amended Complaint.

Further, the Fourth Amended Complaint explicitly petitions this Court to find "the Gang," including Defendant Mason and Defendant Shoe Studio, liable for breach of the agreements. Dkt. No. [94] ¶¶ 95–101. In fact, Plaintiff explicitly

---

[6] As previously noted, Plaintiff filed a notice of the judgment on December 12, 2019. Dkt. No. [46]. However, that was three months into this lawsuit, and the judgment had issued before the suit was filed. And Plaintiff failed to incorporate the judgment into its pleadings until August 15, 2020.

"demands judgment as to the Gang for damages on the Instruments in the principal sum of at least $76,000 . . . including judgment as to [the Loan Recipients] for the outstanding balance of the Ohio Judgment . . . ." id. ¶ 101; id. ¶ 114; id. ¶ 140 ("IOU demands judgment as to the Gang for damages at least equal to the [Loan] Funds, its above equitable remedies, treble damages, pre-judgment interest from the Closing Date, post-judgment interest, costs and attorney's fees."). In other words, Plaintiff admits that it obtained a judgment on its breach-of-contract claim but demands judgment on that claim in the very same document. Ohio's law of res judicata bars this tactic. Accordingly, Plaintiff's claims against Defendants Howard Mason and Shoe Studio LLC are **DISMISSED**.

### 2.    *Res Judicata and Other Defendants*

While res judicata bars Plaintiff's claims against Defendant Mason and Defendant Shoe Studio, the Court does not currently hold that it bars Plaintiff's claims against the other Mason Defendants. The parties have not fully briefed this issue, but Plaintiff argues that at least three Defendants would not benefit from res judicata. See Dkt. No. [116] at 10 ("These [res judicata] factors are inapplicable to IOU's judgment in relation to EPS, Payne or Thrive, *unnamed in IOU's first suit*."); id. ("Thrive cannot invoke this invalid *res-judicata* defense as a non-party to the Judgment.").[7] The remaining Mason Defendants do not counter

---

[7] The Court addresses Thrive Mortgage's Motion to Dismiss below, and this discussion should not be read as a rejection of those arguments.

Plaintiff's argument for a narrow application of res judicata, so the Court will not decide here whether the Ohio judgment bars Plaintiff's claims against them.

### B.    Adequacy of Pleading on Plaintiff's Claims

The Mason Defendants also argue that Plaintiff's claims are inadequately pled under Rule 9(b). Dkt. No. [100] at 4. Plaintiff's Counts I and III against the non-Loan Recipient Defendants are predicated on the accusation that the Gang "fraudulently induced IOU to make the loan," Dkt. No. [94] ¶ 89, and "fraudulently transferr[ed] [Shoe Studio's] property . . . ." Id. ¶ 106. The Mason Defendants argue that Plaintiff has not alleged with particularity facts sufficient to sustain a fraud claim. Dkt. No. [100] at 10 ("The wide-net, shotgun allegations set out in Plaintiff's Complaint fail to meet the Rule 9(b) pleading requirements."). The Mason Defendants point out similar deficiencies related to Plaintiff's RICO claims under Georgia and federal law, Counts VII and VIII. Id. at 11. The Court begins with Plaintiff's fraud and fraud-related claims and then turns to the RICO claims.

### 1.    *Fraud and Fraud-related Claims*

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); Ziemba v. Cascade Int'l, Inc., 256 F.3d 1194, 1202 (11th Cir. 2001). "The particularity rule serves an important purpose in fraud actions by alerting defendants to the 'precise misconduct with which they are charged' and protecting defendants 'against spurious charges of immoral and fraudulent behavior.'" Ziemba, 256

F.3d at 1202 (quoting <u>Durham v. Bus. Mgmt. Assocs.</u>, 847 F.2d 1505, 1511 (11th Cir. 1988)). "Rule 9(b) is satisfied if the complaint sets forth '(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." <u>Id.</u> "In other words, to properly allege fraud under Rule 9(b), the plaintiff must plead the who, what when, where, and why as to the fraudulent conduct." <u>Matter of Life Partners Holdings, Inc.</u>, 926 F.3d 103, 117 (5th Cir. 2019). The Eleventh Circuit has extended this pleading requirement to fraud-related claims like "fraudulent inducement [and] fraudulent concealment." <u>Rogers v. Nacchio</u>, 241 F. App'x 602, 609 (11th Cir. 2007).

Here, Plaintiff alleges in Count I that the "Gang," including the remaining Mason Defendants, "fraudulently induced IOU to make the Loan . . . ." Dkt. No. [94] ¶ 89. However, Plaintiff's Fourth Amended Complaint does not provide the requisite particularity to substantiate this claim. To be sure, Plaintiff alleges that the Loan Recipients, Defendants Mason and Shoe Studio, made false statements concerning their financial situation to procure the loan. <u>Id.</u> ¶ 72. But Plaintiff never alleges what the remaining Defendants said or did that induced it to issue the loan, apart from setting up Defendant Mason as a "straw man." In other words, Plaintiff's claim is missing the "what statements" aspect of a fraud claim.

Rogers, 241 F. App'x at 609. Further, since Plaintiff fails to identify a statement or omission on the part of the Gang, Plaintiff has failed to allege how it might have relied on the same. Id.

Plaintiff also fails to allege "the person responsible for making" statements or misrepresentations. Ziemba, 256 F.3d at 1202; see also Brooks v. Blue Cross and Blue Shield of Fla., Inc., 116 F.3d 1364, 1381 (11th Cir. 1997) ("[I]n a case involving multiple defendants . . . the complaint should inform each defendant of the nature of his alleged participation in the fraud." (quoting Vicom, Inc. v. Harbridge Merchant Servs., Inc., 20 F.3d 771, 777–78 (7th Cir. 1994))). This is because Plaintiff insists on defining 13 of 16 Defendants as "the Gang" and referring to those Defendants throughout the Complaint by that term. This includes Plaintiff's Counts I and III in which it alleges fraud but makes no effort to differentiate between the different members of the Gang. As in Brooks, the Fourth "Amended Complaint is devoid of specific allegations with respect to the separate Defendants." Id. "Plaintiff[] ha[s] simply 'lumped together' all of the Defendants in [its] allegations of fraud." Id. Eleventh Circuit precedent is clear that this collective mode of pleading is insufficient under 9(b). Id. ("[T]he Amended Complaint is also subject to dismissal without prejudice for failure to plead fraud with the requisite specificity as to each of the Defendants under 9(b).").

In short, Plaintiff's generalized, wide-net mode of pleading falls short of the particularity requirement of 9(b). Plaintiff's fraudulent inducement and

fraudulent transfer claims against Defendants Tarina Mason, Sporty's, and EPS

LLC, Counts I and III, are **DISMISSED**.[8] Plaintiff has had ample opportunity to

amend and replead its claims in this case, so the Court will not allow it a chance

to do so again.

### 2.   RICO Claims

Plaintiff's RICO claims under Georgia and federal law fail for similar

reasons. The Eleventh Circuit has extended the particularity requirement of 9(b)

to RICO claims. See Curtis Inv. Co., LLC v. Bayerische Hypo-und Vereinsbank,

AG, 341 F. App'x 487, 491 (11th Cir. 2009) (per curiam) (unpublished) ("[W]here

---

[8] The Eleventh Circuit has not yet addressed whether the 9(b) pleading standard applies to fraudulent transfer claims. But several courts in the Northern District of Georgia have held that 9(b) applies to fraudulent transfer claims, especially when the fraudulent transfer involves some element of fraud, in contrast to a "constructive fraud" claim. See Key Equip. Fin., Inc. v. Overend, No. 1:12-cv-2473-CAP, 2014 WL 126687884, at *8 (N.D. Ga. June 23, 2014); Alliant Tax Credit Fund 31-A, Ltd. v. Murphy, 1:11-cv-0832-RWS, 2011 WL 3156339, at *5 (N.D. Ga. July 26, 2011); Kipperman v. Onex Corp., No. 1:05-cv-1242-JOF, 2007 WL 2872463, at *5–6 (N.D. Ga. Sept. 26, 2007). Several circuits agree. See Pricaspian Dev. Corp. v. Martucci, 759 F. App'x 131, 135–36 (3d Cir. 2019); Stoebner v. Opportunity Fin., LLC, 909 F.3d 219, 225, 226 & n.6 (8th Cir. 2018); In re Lawson, 791 F.3d 214, 217 & n.5 (1st Cir. 2015); In re Sharp Int'l Corp., 403 F.3d 43, 56 (2d Cir. 2005); Nishibun v. Prepress Sols., Inc., 111 F.3d 138, at *1 (9th Cir. 1997) (unpublished); Nw. Nat. Ins. Co. v. Joslyn, 53 F.3d 331, at *1, 4 (6th Cir. 1995) (unpublished). This Court agrees with these courts, at least under the circumstances of this case. Plaintiff has alleged that the Gang "aided, abetted and procured [Defendant Mason's] breach of fiduciary duty and misconduct by their misconduct, fraudulently transferring SSL's property . . . ." Dkt. No. [94] ¶ 106. Unlike a standalone fraudulent transfer claim, this claim is inextricably tied to Plaintiff's allegation that the Gang fraudulently induced it to enter the loan so that they could siphon off the resultant funds. In any event, Plaintiff has not argued that 9(b) would not apply to its fraudulent transfer claim, only that the fraudulent transfer claim is adequately pled.

the claim is grounded in fraud, such as Curtis's Georgia RICO and common law fraud charges, the complaint must comply with Fed. R. Civ. P. 9(b)'s requirement [of particularity].". This means that a RICO plaintiff must allege "what statements were made . . . the time and place of each such statement and the person responsible . . . the content of such statements and the manner in which they misled the plaintiff, and [] what the defendants obtained as a consequence of the fraud." Id. at 493 (quoting Brooks, 116 F.3d at 1371). "Because fair notice is perhaps the most basic consideration underlying Rule 9(b), the plaintiff who pleads fraud must reasonably notify the defendants of their purported role in the scheme." Id. (citing Brooks, 116 F.3d at 1381).

Here, Plaintiff's RICO claim fails to meet these requirements. As with Plaintiff's fraud claims, Plaintiff's RICO claims exclusively plead in the collective:

> The Gang committed misconduct as to IOU and their creditors, throughout the country, fraudulently inducing them through HDM, a straw-man, to approve and fund large loans to them . . . . [T]he Gang conducted or participated in their enterprise to commit a continuous related, pattern of racketeering, aiding, abetting, and/or assisting, unlawfully agreeing to assist, conspiring to commit related, continuing federal/state crimes, to fraudulently obtain IOU's loan Funds and those of the other above creditors . . . . The Gang targeted IOU and the other creditors to fraudulently, falsely and illegally obtain the Funds . . . . IOU reasonably relied on the Gang's deceptions and fraud forming the basis for their racketeering activity in approving the Loan and advancing the Funds, unaware of their crimes, as were the other creditors, deceived by them.

Dkt. No. [94] ¶ ¶ 125–135. In other words, Plaintiff lumps 13 Defendants into a group, "the Gang," which purportedly acted through a "straw-man," Defendant

Mason. Importantly, Plaintiff offers no particularized allegations supporting the nefarious nature of the connection between the Gang and Defendant Mason. But even if it had, the Court would still be left to guess which members of the Gang were responsible for which parts of the conspiracy. In Plaintiff's generalized mode of pleading, all Defendants are responsible for everything. These allegations fall well short of 9(b)'s requirement that RICO claims be pled with particularity.[9] Plaintiff's RICO claims, Counts VII and VIII, are **DISMISSED** as to the Mason Defendants.

### 3.   *Remaining Claims*

The Court's resolution of the Mason Defendants' Motion to Dismiss resolves fewer than all claims against them. As previously discussed, Defendant Howard Mason and Defendant Shoe Studio are dismissed from this action through the application of res judicata. And the Court has dismissed several counts against the remaining Mason Defendants under the 9(b) particularity requirement:

- Count I – Declaratory, Equitable and Related Relief

- Count III – Breach of Fiduciary Duty of Trust to Creditor

- Count VII – Federal RICO

- Count VIII – Georgia RICO

---

[9] The same deficiencies discussed here regarding Plaintiff's Federal RICO claim apply to Plaintiff's Georgia RICO claim. Dkt. No. [94] ¶¶ 141–152.

However, this leaves Count II – Breach of Instruments; Counts IV–VI, which request various forms of equitable relief on the underlying claims; and Count IX – Attorney's Fees. The Mason Defendants have not moved to dismiss these claims specifically, the Court has rejected their shotgun-pleading argument, and the Court finds the remaining claims do not hinge on a showing of fraud in the same way as the dismissed counts. This leaves the Court with no reason to dismiss the remaining claims against the Mason Defendants apart from Howard Mason and Shoe Studio.

## IV.   THRIVE MORTGAGE, LLC'S MOTION TO DISMISS

Defendant Thrive Mortgage has also moved to dismiss Plaintiff's Fourth Amended Complaint. Dkt. No. [104]. Plaintiff does not allege that Thrive Mortgage was part of the Gang. Rather, Plaintiff alleges that Thrive Mortgage is the mortgagee on a property ("Horace Street Property") in which Plaintiff claims it has a superior interest. Dkt. No. [94] ¶ 68. Plaintiff raises several claims which would putatively elevate its interest in the Horace Street property above that of Thrive Mortgage. These claims include a declaratory judgment of the superiority of the instruments vis a vis Thrive's mortgage, id. ¶¶ 87–93 (Count I), equitable relief or a mortgage lien, id. ¶¶ 115–119 (Count V), and a constructive trust, id. ¶ ¶ 120–124 (Count VI).

Thrive Mortgage argues that Plaintiff has failed to state a claim for several reasons: (1) the Ohio judgment extinguished the instruments upon which Plaintiff seeks relief in this case; (2) Plaintiff failed to follow the Ohio's statutory

requirement to register its Ohio judgment; (3) Plaintiff's case here did not serve as *lis pendens* to put Thrive Mortgage on notice of the judgment; and (4) Plaintiff has not shown that it is entitled to an equitable lien. Dkt. No. [104]. Plaintiff has contested some of these arguments, and it also argues that Georgia law, not Ohio law, applies to this case. The Court will first lay out the background of Plaintiff's claims against Thrive Mortgage, taking all facts in the light most favorable to Plaintiff's Fourth Amended Complaint. Then the Court will turn to the merits of Thrive Mortgage's Motion to Dismiss.

### A.    Background

Plaintiff executed the loan agreements at issue in this case with the Loan Recipients on September 23, 2016. Dkt. No. [116] ¶ 5. Defendant Mason allegedly defaulted on the loan soon after and dissolved Shoe Studio. Id. ¶ 9. Plaintiff sued the Loan Recipients in Ohio for breach of the agreements on February 3, 2017. Id. ¶ 10; Dkt. No. [94] ¶ 43. Defendant Mason allegedly transferred property from Shoe Studio to his other companies, Defendants EPS and Sporty's, which were not Loan Recipients. Dkt. No. [116] ¶¶ 10–13; Dkt. No. [94] ¶¶ 40, 47. As these transfers were happening, Plaintiff obtained a judgment in the Ohio case on June 15, 2017. Id. ¶ 46.

On October 3, 2018, Defendants Mason and EPS acquired 109 Horace Street, Dayton, OH ("Horace Street Property"). Id. ¶ 61. They later transferred the Horace Street Property to Defendant Chrysalis Payne on April 6, 2020, and she executed a mortgage in favor of Thrive Mortgage on the same day. Id. ¶¶ 67–68.

The question, then, is whether Plaintiff's putative interest in the Horace Street Property, which it claims to have obtained through the Ohio judgment, is superior to the mortgage that Thrive Mortgage holds on the same property.

###### B.     Merits of Plaintiff's Claims against Thrive Mortgage

Plaintiff brings no claims against Thrive Mortgage in its personal capacity and admits that this is so. Dkt No. [94] ¶ 10 ("IOU does not seek any damages or other *in-personam* relief as to Defendants USB, CP and [Thrive] provided they seek none against IOU."). The remainder of the Fourth Amended Complaint bears this out. In its claims section, Plaintiff mentions Thrive Mortgage three times (abbreviated as "TML")—once in Count I, once in Count V, and once in Count VI. Id. ¶¶ 92, 118, 123. But in each of those instances, Plaintiff simply alleges that its own interest in the property is superior to that of Thrive Mortgage.

In fact, Plaintiff does not demand relief against Thrive Mortgage even in the Counts where it alleges its interest is superior. Rather, in each of these Counts, Plaintiff requests relief "to bind the Gang," Dkt. No. [94] ¶ 93, to "declare and impose an equitable lien/mortgage on the Gang's property," id. ¶ 119, and to "declare and impose a constructive trust on the Gang's property . . . ." Id. ¶ 124. But "the Gang" does not include Thrive Mortgage, id. ¶ 7, and Plaintiff even alleges that the Gang duped Thrive Mortgage into taking an interest in the Horace Street Property. Id. ¶ 130 ("Thrive Mortgage also funded its 2020 Mortgage, subject to and with notice of this suit, into which appears [sic] to have

been deceived by the Gang."). Under a strict reading, Plaintiff asserts no *in personam* claim at all against Thrive Mortgage.

The Court therefore interprets Plaintiff as seeking *in rem* relief related to its alleged interest in the Horace Street Property. But the Court cannot adjudicate contested rights in a piece of property over which it has not asserted *in rem* jurisdiction. See, e.g., Odyssey Marine Expl., Inc. v. Unidentified Shipwrecked Vessel, 657 F.3d 1159, 1171 (11th Cir. 2011) ("Only if the court has exclusive custody and control over the property does it have jurisdiction over the property so as to be able to adjudicate rights in it that are binding against the world."); Betty K Agencies, Ltd. v. M/V Monada, 432 F.3d 1333, 1341 (11th Cir. 2005) ("In general, 'a valid seizure of the res is a prerequisite to the *initiation* of an *in rem*' action." (quoting Republic Nat'l Bank of Miami v. United States, 506 U.S. 80, 84 (1992))); United States v. $38,570 U.S. Currency, 950 F.2d 1108, 1113 (5th 1992) ("No *in rem* suit can be maintained without a valid arrest of the *res* by the marshal."). This case is not one against the Horace Street Property, but rather against a mortgagor and mortgagee with putative interests in that property. But as previously discussed, Plaintiff admits that it seeks no *in personam* relief against those entities. Accordingly, the only claims that Plaintiff might have related to Thrive Mortgage are *in rem* claims over which this Court has no jurisdiction.

For these reasons, Plaintiff has alleged no valid claim against Thrive Mortgage. Defendant's Motion [104] is therefore **GRANTED**, and Plaintiff's suit against Thrive Mortgage is **DISMISSED** for failure to state a claim.

## V.    CONCLUSION

Based upon the foregoing, the Mason Defendants' Motion to Dismiss [100] is **GRANTED in part** and **DENIED in part**. Plaintiff's claims against Defendants Howard D. Mason, III and Shoe Studio, LLC are **DISMISSED** as res judicata.

Further, Counts I, III, VII, and VIII are **DISMISSED** under Rule 9(b) as to the remaining Mason Defendants—EPS LLC, Tarina L. Mason, and Sporty's Taphouse and Grill, Inc. Plaintiff's other claims against these Defendants remain.

Defendant Thrive Mortgage LLC's Motion to Dismiss [104] is **GRANTED**. Plaintiff's claims related to the Horace Street Property are **DISMISSED without prejudice** for want of jurisdiction. Plaintiff's claims against Thrive Mortgage LLC are **DISMISSED**.

The Clerk is **DIRECTED** to **TERMINATE** Howard Mason, Shoe Studio, LLC, and Thrive Mortgage LLC as Defendants.

Plaintiff's Motion for Leave to File [112] is **GRANTED**.

**IT IS SO ORDERED** this 17th day of December, 2020.

**Leigh Martin May**
**United States District Judge**